# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **NEAL THOMAS GRAHAM,** | ) |
| Petitioner, | ) |
| v. | ) Case No. CIV 05-322-RAW-KEW |
| **MIKE ADDISON, Warden,** | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge on petitioner's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate currently incarcerated at Joseph Harp Correctional Center in Lexington, Oklahoma, attacks his conviction in Muskogee County District Court Case Number CF-2000-825 for 5 counts of Indecent Exposure and 2 counts of Lewd Molestation of a Child Under Sixteen Years Old. His trial attorney also represented him on direct appeal, and the sole ground for federal habeas corpus relief is the alleged ineffectiveness of counsel at trial and on appeal. He raises four areas of ineffective assistance:

   I.   Counsel failed to investigate competency or credibility of key witness who filed a false police report. False police report was then used as the basis for all procedures that followed, including search, arrest, trial, conviction, and imprisonment.

   II.  Failed to investigate or object to court errors, which could have resulted in judge's recusal and mistrial.

   III. Failed to submit meaningful appeal or to correct serious errors in the appeal itself, even when asked to do so in writing.

   IV.  Abandonment of client at a critical point in the appeal process.

(Docket #1 at 5).

The respondent concedes that petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review and has submitted the following records to the court for consideration in this matter:

- A. Petitioner's brief in his direct appeal.

- B. The State's brief in petitioner's direct appeal.

- C. Summary Opinion affirming petitioner's Judgments and Sentences. *Graham v. State*, No. F-2003-1413 (Okla. Crim. App. Oct. 21, 2004).

- D. Order denying petitioner's application for post-conviction relief. *Graham v. State*, No. CF-2000-825 (Muskogee County Dist. Ct. May 19, 2005).

- E. Petitioner's brief in support of his post-conviction appeal.

- F. Order Affirming Denial of Post-Conviction Relief. *Graham v. State*, No. PC-2005-0547 (Okla. Crim. App. July 14, 2005).

- G. Affidavit for Search Warrant of petitioner's apartment.

- H. Handwritten "Request for New Applications to Join Staff."

- I. Copy of Jury Instruction No. 23, OUJI CR 9-9, Evidence--Proof of Other Crimes.

- J. State's Exhibits 4, 5, and 6.

- K. Transcript of petitioner's preliminary hearing.

- L. Transcripts of petitioner's jury trial and sentencing.

Petitioner did not raise his ineffective assistance of counsel claims on direct appeal, but he did present the issues in his post-conviction application. Because the same attorney represented him at trial and on appeal, the claims were properly raised in his post-conviction

action. *See English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998). The respondent asserts the Oklahoma Court of Criminal Appeals (OCCA) considered and found no merit in petitioner's application for post-conviction relief, and under the applicable federal habeas corpus statutes, habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In its Order Affirming Denial of Post-Conviction Relief, the OCCA found "[t]he record does not support Petitioner's contention he was denied effective assistance of trial or appellate counsel." *Graham v. State*, No. PC-2005-0547, slip op. at 2 (Okla. Crim. App. July 14, 2005). The OCCA also held that "[f]ailure to raise each and every issue is not determinative of ineffective assistance of counsel, and counsel is not required to advance every cause of argument regardless of merit." *Id*. (citing *Cartwright v. State*, 708 P.2d 592 (Okla. Crim. App. 1985)).

"There is a strong presumption that counsel provided effective assistance of counsel and petitioner has the burden of proof to overcome that presumption." *United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988), *cert. denied*, 489 U.S. 1089 (1989) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)). In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth the two-part test for determining the

3

validity of a habeas petitioner's claim of ineffective assistance of counsel. The test requires a showing that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id*. at 687.

> The *Strickland* test also applies to assessing the effectiveness of appellate counsel. *See United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, we first examine the merits of the omitted issue. If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. *See Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing *Cook*, 45 F.3d at 392-93), *cert. denied*, 525 U.S. 1151 (1999)). If the issue has merit, we then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial. *See Cook*, 45 F.3d at 394.

*Hawkins v. Hannigan*, 185 F.3d 1146, 4452 (1999).

*Facts*

The record shows that Muskogee Police Officer Todd Whitman investigated the sexual molestation of an 11-year old girl who disclosed she was molested twice by petitioner at his apartment. She also stated she had seen petitioner molest other children at his residence, and he had shown her a movie with naked people, including petitioner and a girl named Crystal. Although petitioner had no children and lived alone, he had a "playroom" for children where he kept the movie locked in a cabinet. Based on Officer Whitman's affidavit, a search warrant for petitioner's apartment was issued.

The trial testimony was summarized by the State in its direct appeal brief:

> Between June 1, 2000, and August 31, 2000, K.B., Sr., eight years old, and her sister K.B., Jr., six years old, befriended the defendant, who lived in the same apartment complex as they did, the Meadowbrook Apartments in Muskogee, Oklahoma (Tr. 131-32, 276, 300). The sisters often visited the defendant in his apartment where he had pop, candy, and video games for them (Tr. 133, 215). In addition to these items, however, the defendant also showed

4

them adult magazines and videos, and sexually molested them.

K.B., Sr. testified that at his apartment, the defendant would show them "nasty magazines" of naked people, one of which showed a girl with "a boy's part in her mouth" (Tr. 134-35). She went on to testify that she saw the private parts of both boys and girls in the magazines the defendant showed her (Tr. 147-48). The magazine the defendant showed her also depicted a woman with her "titties" in another woman's mouth (Tr. 149). K.B., Sr. identified State's Exhibits 5 and 6 as the magazines the defendant showed them in his apartment (Tr. 147). These magazines were titled "Penthouse" and "Hustler Erotic Video Guide" (State's Exhibits 5 and 6). K.B., Jr. likewise testified that there came a time during the summer when the defendant showed her and her sister magazines of naked people (Tr. 215-16). These magazines showed "boys' and girls' private parts" (Tr. 217). K.B., Sr. testified the defendant brought the magazines out to show them, and that they did not find the magazines themselves (Tr. 150).

Sometime after the girls had been going to the defendant's apartment, he started showing them adult videos (Tr. 150-51, 219). K.B., Sr. testified the defendant told them he was going to get some movies (Tr. 152). K.B., Sr. identified State's Exhibits 3 and 4 as the movies the defendant showed them in his apartment (Tr. 145-46). These videos were titled "Advanced Oral Sex Techniques" and "Advanced Sexual Techniques" (State's Exhibits 3 and 4). The movies had naked people in them, and as they watched them, the sisters sat on the couch and the defendant sat in his chair (Tr. 152-53, 219). They watched part of each movie (Tr. 153). K.B., Sr. did not tell her parents about the magazines and videos the defendant showed her and her sister, because the defendant warned her not to do so (Tr. 153-54).

During that summer the defendant also exposed himself to the girls. K.B., Sr. testified she saw the defendant naked in his bedroom and with his pants off in the living room (Tr. 154-55). While he had his pants off in the living room, he rubbed powder on his penis in K.B., Sr.'s presence (Tr. 155). After he powdered his penis, the defendant told K.B., Sr. he was going to rub himself (Tr. 156). As he masturbated in front of her, the defendant told K.B., Sr. that babies are made when "white stuff" comes out of the man's "private spot" (Tr. 157). K.B., Sr. witnessed the defendant's ejaculation (Tr. 158).

The defendant also exposed himself to K.B., Jr. The defendant twice made K.B., Jr. put powder on his penis (Tr. 220). K.B., Jr. also saw the defendant naked in the bathtub, where he masturbated to ejaculation in front

5

of her (Tr. 221-23). The defendant also touched K.B., Jr.'s vagina underneath her underwear with his hands and fingers many times (Tr. 224, 231). . . .

      In addition to the testimony of the two victims in this case, the State also introduced the testimony of another female child against the defendant. K.M., twelve years of age at the time of trial, is a friend of the victims in the case (Tr. 247). She testified that during the summer of 2000, the time period during which the defendant committed his crimes against K.B., Sr. and K.B. Jr., she too would visit the defendant in his apartment and play games, sometimes alone and sometimes with her friends (Tr. 248).

      K.M. testified that during this time period, the defendant touched her vaginal area many times, both above and below her clothing, as well as her breasts (Tr. 248-49). The defendant would also grab K.M.'s hand and put it on his penis, both above and below his clothing (Tr. 265-67). The defendant also showed K.M. "nasty" movies which showed the private parts of naked men and women, "kissing and doing things" (Tr. 249-50).

(Docket #7, Exhibit A at 2-5) (footnote omitted).

*Officer's Affidavit and Search Warrant*

Petitioner claims his trial counsel should have investigated the background, competency, and credibility of the State's key witness M.W., a minor child, because her allegations initiated the case against him. He alleges M.W. filed a false police report accusing him of making threatening telephone calls to her at her residence. He further claims she later accused him of rape and death threats that were supposed to have occurred before the threatening phone calls. According to petitioner, no charges were filed against him for M.W.'s accusations. Petitioner asserts that if counsel had subpoenaed records and interviewed witnesses, he would have discovered that M.W. is a pathological liar, a sexual predator of young boys, a former patient in a mental hospital, and a former ward of the State because her parents could not handle her. M.W.'s allegedly false police report was the basis of the search warrant leading to petitioner's arrest and conviction. He contends that if

6

counsel had adequately investigated M.W., counsel then could have filed a (1) motion for a *Franks* hearing, (2) a motion to compel *Brady* material, and (3) a motion to suppress all the evidence found in the search of his apartment. In its order denying petitioner's application for post-conviction relief, the state district court found counsel was not ineffective in his alleged failure to investigate M.W.:

> Petitioner has not met his burden of showing that counsel's performance was deficient, and . . . Petitioner was represented at all stages of this matter by [an] experienced and competent attorney who provided him effective assistance of counsel. The [Petitioner] basis [sic] all his argument on a witness, [M.W.]. [M.W.] was **NOT** a witness to this case, but in another separate felony case which the State decided not to prosecute, after this case went to trial.

*Graham v. State*, No. CF-2000-825, slip op. at 2 (Muskogee County Dist. Ct. May 17, 2005) (emphasis in original).

As correctly stated by the state district court, M.W. was not a witness in the conviction petitioner is challenging in this habeas action. There apparently was a separate criminal action filed against petitioner with respect to M.W.'s allegations against him, which was dismissed after petitioner's conviction in this case. *See State v. Graham*, No. CF-2000-795 (Muskogee County Dist. Ct. Mar. 4, 2002).

Petitioner alleges his counsel was ineffective in failing to discover essential background material on M.W. that would have warranted a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). He further claims his counsel should have compelled the production of M.S.'s background information under *Brady v. Maryland*, 373 U.S. 83 (1963). He bases his *Brady* claim on an assertion that the prosecutor knew, or should have known about M.W.'s background, because the police and the Department of Human Services knew about M.W. According to petitioner, M.W. knowingly filed a false police report about him,

7

and the investigators, including Officer Todd Whitman who swore the affidavit, and DHS Caseworker Lisa Linzey, both knew that M.W. was an unreliable witness and informant. Furthermore, M.W. was a patient at a mental hospital at the time of petitioner's preliminary hearing. Although petitioner claims M.W.'s accusations against him were "groundless," her statements initiated the prosecution against him in this case.

> Officer Whitman's affidavit stated, in pertinent part that:
>
> (4) based upon the following facts: Todd Whitman has been a police officer for the City of Muskogee for over 13 years and is currently assigned in the juvenile investigations division, whose primary purpose is the investigation of crimes committed against children. Affiant has gone to seven different seminars that specialize in training on crimes against children.
>
> Affiant is currently investigating the sexual molestation of an 11-year-old female. Upon interviewing the victim she disclosed that besides being molested twice by the suspect at his apartment, she also witnessed him molest two other children at the suspect's residence. The victim told Affiant that the suspect showed her a movie that had naked people on it, including the suspect and a girl she knows as Crystal. The victim advised that the suspect keeps the movie locked up in a cabinet in the playroom of his apartment. Lisa Linzey, the DHS worker present, advised that she had been at the suspect's apartment on a previous unsubstantiated referral, and that he did have a locked cabinet in the closet of the playroom. The victim has seen at least 13 different children at the suspect's apartment, but suspect has no children, lives alone, but has a playroom for children. Based on my training and material I have read on preferential child molesters, I feel that even though the victim hasn't seen the video tape in over six months, the suspect will still have possession of it, because of its personal importance to him.

Docket #7, Exhibit G.

The respondent alleges defense counsel's failure to file a motion to suppress all evidence resulting from the issuance of the search warrant did not prejudice petitioner, because the motion would have been denied. Probable cause for a search warrant requires "facts that would lead a prudent person to believe there is a fair probability that contraband

8

or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001), *cert. denied*, 535 U.S. 945 (2002). "[A]n informant's 'veracity,' 'reliability' and 'basis of knowledge'. . . should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause.'" *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "The probable cause standard . . . is a 'practical, nontechnical conception,' based on a "totality-of-the-circumstances approach." *Id*. at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

"A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id*. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Probable cause may be based on information received through an informant, as long as the information is reasonably corroborated by other matters within the police officer's knowledge. *Jones v. United States*, 362 U.S. 257, 269 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 84-85 (1980). Statements which are knowingly false or exhibit a reckless disregard for the truth, however, must not be used by the magistrate to determine probable cause. *Franks*, 438 U.S. at 155-56. A police officer's opinion, based on his expertise, that the evidence sought will be found in the place to be searched also should be considered in determining probable cause. *United States v. Mathis*, 357 F.3d 1200, 1203 (10th Cir. 2004).

Here, the court finds there was probable cause to issue the search warrant. Even if the child victim had been determined to be unreliable after issuance of the warrant, Officer Whitman's belief of the child victim's truthfulness was substantiated when he requested the search warrant. Probable cause was based on the statements of the victim, Officer

Whitman's training in the investigation of crimes against children, and the corroboration of the child victim's testimony by a DHS worker with personal knowledge of petitioner's apartment. In addition, there is no indication the magistrate relied on knowingly false statements by the affiant, or that there was a reckless disregard for the truth.

The OCCA has set the standard for allowing a *Franks* hearing as follows:

> In order to obtain a hearing at trial on this issue, [a defendant] would have had to make a "substantial showing" that the false statement . . . 1) was made knowingly and intentionally or with reckless disregard for the truth; 2) was included in the warrant affidavit; and, 3) the allegedly false statement is necessary to the finding of probable cause.

*Young v. State*, 992 P.2d 332, 339 (1998) (citing *Franks*, 438 U.S. at 155-56).

The court finds petitioner has made no showing that the child victim's statements were false, or that the officer's use of the allegedly false information in the affidavit was knowing and intentional, or done with a reckless disregard for the truth. Because petitioner has not made a showing that he was entitled to a *Franks* hearing, his trial/appellate counsel was not ineffective in failing to raise this claim. Petitioner's claim that his attorney should have investigated M.W.'s background and sought *Brady* evidence are relevant only for the validity of the officer's affidavit. As discussed above, M.W.'s only involvement in the case was in the investigation leading to the officer's affidavit. Therefore, the OCCA's determinations that trial/appellate counsel was not ineffective in failing to file meritless motions or raise meritless appellate claims related to ths issue of the officer's affidavit and search warrant were consistent with federal law, pursuant to 28 U.S.C. § 2254(d).

*Alleged Improper Statements at Trial*

Petitioner alleges his trial counsel was ineffective in failing to object to (1) the police officer's statement about a February incident of molestation, reported by M.W., and (2) the

prosecution's claims that the victims' crying on the witness stand was because of their fear of petitioner.

During direct examination Officer Whitman was asked whether all of the molestation incidents he investigated occurred during the two months prior to September 2000 (Tr. 269, 276). Officer Whitman responded that one of the cases happened in February of that year (Tr. 269). The record shows that defense counsel promptly objected to the comment (Tr. 269). The parties then had a conference in the judge's chambers, out of the presence of the jury (Tr. 269-75). Defense counsel reiterated his objection to the comments and moved for a mistrial (Tr. 273). The conference in chambers concluded with an agreement that there would be no further discussion about any February incidents of molestation (Tr. 275). When the trial resumed, the prosecutor asked Officer Whitman the same question, and Whitman's answer did not include any mention of a February incident (Tr. 276). Because Officer Whitman corrected his answer in front of the jury, petitioner was not prejudiced by his attorney's conduct or failure to act.

With respect to the prosecutor's statements about the victims' tears on the witness stand, the respondent asserts petitioner has mischaracterized the prosecutor's statements, and the prosecutor did not say the children feared petitioner. The prosecutor did make numerous statements about the children crying during their testimony, but the statements indicated the crying was caused by their embarrassment and their fear of testifying in front of strangers (Tr. 344, 359-62). During petitioner's cross-examination, the prosecutor asked him if he agreed that one of the child witnesses was "scared to death to talk in front of these folks. . . ." (Tr. 344). In addition, during the closing argument, the prosecutor said:

> I submit to you when she testifies she is absolutely scared to death. It is scary.

> You've got 12 people looking at you, talking about people touching you, you having to touch a penis and things. It is horrible. Can you imagine what it would be for a little six-year-old girl having to go through something like that?

(Tr. 361).

In examining habeas claims of prosecutorial misconduct, the court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir.), *cert. denied*, 525 U.S. 950 (1998). "[I]t 'is not enough that the prosecutor['s] remarks were undesirable or even universally condemned.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Darden v. Wainwright*, 699 F.2d 1031, 1036 (11th Cir. 1983)). Instead, "[t]he relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

After careful review of the record, the court finds the prosecutor made no improper statements that denied petitioner his right to due process. Therefore, petitioner's counsel was not ineffective in failing to object to the comments or to raise the prosecutor's statements on direct appeal. The decision by the OCCA was not contrary to or an unreasonable application of federal law, and its decision was not based on an unreasonable determination of the facts.

*Handwritten Letter*

Petitioner alleges his counsel was ineffective in failing to file a "motion to suppress" the "highly prejudicial" handwritten letter, State's Exhibit No. 9, which was found in his apartment (Docket #7, Exhibit H). The unsigned letter, titled "Request for New Applications to Join Staff," discusses the writer's 1,147 incidents of sexual perversion and his desire to follow L. Ron Hubbard and to progress in scientology. The writer stated he had been "run

12

out of town at least 3 times for messing around with underage girls," and he had "considered moving to Africa where in certain tribes, a girl's sexual experiences begin around age six."

Construing petitioner's pleadings liberally, *Haines v. Kerner*, 404 U.S. 519 (1972), the court finds petitioner is claiming his trial counsel should have filed a motion in limine. The respondent argues that any failure by defense counsel to file a motion in limine was cured when counsel repeatedly objected to admission of the letter and use of the letter as a basis for questioning. (Tr. 315, 334-43, 348-49). Counsel even moved for a mistrial over the letter (Tr. 349). Because of counsel's objections, the letter was not shown to the jury, and no questioning about the letter's prejudicial content was allowed (Tr. 349-51).

The court finds that even if defense counsel's repeated objections to admission of the letter did not cure the failure to file a motion in limine, petitioner was not prejudiced by the letter's limited admission at trial. The letter was admitted only for the purpose of being part of the record, and the jury never saw it (Tr. 349). Petitioner stated it was not his letter, and it was not in his handwriting (Tr. 340). All but one of the prosecutor's questions about the letter concerned topics such as scientology and personal ethics, not the statements in the letter about the incidents of perversion and the writer's beliefs about sex with children (Docket #Exhibit H, Tr. 334-35, 341-42). The only possibly prejudicial question about the letter was whether petitioner ever had been run out of town for "messing with young girls," or if he had written a letter indicating he had been run out of town. (Tr. 314-15). Defense counsel's prompt objection was sustained (Tr. 315, 348-49).

Furthermore, contrary to petitioner's claims, appellate counsel did raise the admissibility of the letter on direct appeal (Docket #7, Exhibit A at 4-5). The OCCA found "the State's limited questioning about an unidentified letter which was not admitted into

evidence did not elicit any evidence of other crimes." *Graham*, No. F-2003-1413, slip op. at 2. This court finds petitioner's counsel was not ineffective in his representation at trial and on appeal with respect to the issue of the letter, and the determination of this claim by the OCCA was consistent with federal law.

*Fingerprint and DNA Evidence*

Petitioner challenges his attorney's failure to request fingerprint and DNA testing on the pornographic magazines, videos, and the box of petitioner's belongings that were found in his apartment. He apparently is claiming the two girls who were victims in this case found the pornographic videos in the locked closet and watched them while he was asleep. He also claims that Benny Stroud's DNA and fingerprints were "all over the magazines as well as the box of [petitioner's] belongings" (Docket #12 at 3), yet Stroud testified that none of the pornographic magazines belonged to him. Petitioner is alleging that fingerprint and DNA testing of the evidence would have shown that the evidence had been handled by so many people, including the assistant district attorney who prosecuted the case, and the evidence was irrevocably tainted.

First, it is unclear when Benny Stroud allegedly testified. Neither the preliminary hearing transcript nor the trial transcript indicates he was a witness in this case. Next, petitioner is claiming Stroud's and the victims' DNA and fingerprints were all over the evidence, but he complains that no DNA or fingerprint testing was completed. More important, he has failed to demonstrate how he was prejudiced under the *Strickland* standard by his attorney's failure to pursue DNA and fingerprint testing. This case rested on the testimony of the victims, and petitioner has not shown how forensic evidence would have changed the outcome of his trial. Therefore, petitioner's attorney was not ineffective in

failing to request these tests or to raise this issue on appeal.

*Jury Instruction No. 23*

Petitioner complains about trial counsel's request that Jury Instruction No. 23 be given. Instruction No. 23 was a limiting instruction regarding evidence of other crimes:

> OUJI-CR 9-9
> EVIDENCE - PROOF OF OTHER CRIMES
>
> Evidence has been received that the defendant has allegedly committed **misconduct/offenses/(an offense)** other than that charged in the information. You may not consider this evidence as proof of the guilt or innocence of the defendant of the specific offense charged in the **information/indictment**. This evidence has been received solely on the issue of the defendant's alleged **motive/opportunity/intent/preparation/(common scheme or plan) /knowledge/identity/(absence of mistake or accident)**. This evidence is to be considered by you only for the limited purpose for which it was received.

(Docket # 7, Exhibit I (emphasis in original)).

Petitioner apparently is arguing the instruction was improper, because no other offenses were proven. The instruction could have applied to the alleged February molestation and to the question about whether petitioner had been run out of town for "messing around" with young girls. Contrary to petitioner's assertions, the instruction did not reference any "valid offenses." Instead, this limiting jury instruction was a safeguard to protect petitioner from any undue prejudice that could have arisen from Officer Whitman's testimony.

A jury instruction, even if erroneous, is not constitutionally defective "unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense or is otherwise constitutionally objectionable as, for example, by transgressing the constitutionally rooted presumption of innocence." *Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir.1979) (citations omitted), *cert. denied*, 444 U.S. 1047

15

(1980). Here, the court finds petitioner was not prejudiced by Instruction No. 23, so his attorney was not ineffective in failing to challenge the instruction or to raise the issue on appeal. The OCCA correctly decided this claim, so habeas relief is not warranted.

*Blackboard in the Courtroom*

Petitioner alleges his attorney failed to challenge the trial judge's act of placing a blackboard between petitioner and the child witnesses, without the judge's first establishing the need to do so. Petitioner maintains this barrier between him and the witnesses violated the Confrontation Clause. The record shows that before voir dire, the trial judge notified the attorneys that whenever a juvenile witness was called to testify in cases such as petitioner's, a blackboard was placed between the child and the defendant to prevent intimidation or embarrassment:

> THE COURT: . . . As I have also indicated, at any time a juvenile witness is called to testify in this case, I anticipate that I'll have a panel, a blackboard, something placed between Mr. Graham and that juvenile witness. As I believe that's in the best interest of the minor child. It will not be placed between the witness and Mr. Loge [defense counsel], but I think there's still a possibility of intimidation or embarrassment. I think it would be in the best interest, that will occur if there is a juvenile witness called to testify in the case. Is that agreeable with the district attorney?
>
> [PROSECUTOR]: Yes, sir.
>
> THE COURT: Mr. Loge?
>
> MR. LOGE: Yes, Judge.
>
> THE COURT: Very well. . . .

(Tr. 5-6).

When the first child was called to testify, the blackboard was placed between

16

petitioner and the witness (Tr. 125-26). Defense counsel, the prosecution, the judge, and the jury still could view the witnesses during their testimony (Tr. 126). Two of the three child witnesses who testified at trial also testified at the preliminary hearing. Petitioner disputes the respondent's assertion that the blackboard was not used at the preliminary hearing, maintaining the blackboard also was positioned before the preliminary hearing, but it was not mentioned in the transcript. The record shows the testimony of the two child victims was substantially similar at the preliminary hearing and at trial, and their testimony incriminated petitioner at both proceedings (PH Tr. 6-14, 37-46; Tr. 129-60, 213-24).

"[T]he Confrontation Clause guarantees the defendant a fact-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). There are, however, "certain exceptions to an absolute right to physically confront witnesses." *United States v. Farley*, 992 F.2d 1122, 1124 (10th Cir. 1993) (citations omitted).

> *Maryland v. Craig* set the standards by which a child witness can constitutionally testify against a defendant at trial in the absence of face-to-face confrontation with the defendant. 497 U.S. 836 (1990). *Craig* held that [the] defendant's right to confrontation is satisfied when (1) the denial of confrontation is necessary to further an important public policy and (2) where the reliability of the testimony is assured. *Id*. at 850. . . .
>
> *Craig* held that a child-witness may testify out of the presence of the defendant when necessary to further the state's interest in protecting the physical and psychological well-being of its children. *Id.* at 852. To insure that the state denies face-to-face confrontation only to further this purpose, the state must show on a case-by-case basis that the procedure is necessary to protect the particular child involved. *Id.* at 855. The trial court must hear expert testimony regarding the particular child and must make specific findings that the child would be traumatized, not by the courtroom generally, but by the presence of the defendant, in more than a *de minimus* amount. *Id*. at 855-56. . . .

17

> After *Craig*, a trial court must find that testifying in front of the defendant will cause the child witness emotional trauma, and that the trauma must impair the child's ability to communicate.

*Thomas v. Gunter*, 962 F.2d 1477, 1481-82 (10th Cir. 1992) (footnotes omitted).

Here, the trial court, in an attempt to prevent intimidation or embarrassment of juvenile witnesses in cases such as petitioner's, had a policy of placing a blackboard between the defendant and the juvenile witness (Tr. 5). The blackboard was employed, however, without an individualized finding of its necessity to protect the particular child involved. Therefore, petitioner was denied the right to confront the child witnesses.

Nonetheless, this court finds that petitioner's counsel was not ineffective in failing to object to the blackboard, because petitioner has failed to demonstrate prejudice under the *Strickland* test. "To establish prejudice under *Strickland*, [petitioner] must show there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Davis v. Executive Director of Dep't of Corrections*, 100 F.3d 750, 760 (10th Cir. 1996), *cert. denied*, 520 U.S. 1215 (1997) (quoting *Strickland*, 466 U.S. at 694).

In light of all the evidence presented at trial, the court finds petitioner has failed to meet his burden of showing the outcome of the trial would have been different without the placement of the blackboard between him and the child witnesses. Because counsel was not ineffective in failing to object to the blackboard, he was not ineffective in failing to raise this non-meritorious claim on appeal. *See Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998). Therefore, the court finds the OCCA's denial of relief on this claim was consistent with federal law, and habeas corpus relief is not warranted.

*Appellate Arguments*

Finally, petitioner complains that appellate counsel failed to follow his instructions in presenting claims for direct appeal. The OCCA addressed this issue on the merits, finding the record did not support petitioner's claim that he was denied effective assistance of counsel. *Graham v. State*, No. PC-2005-547, slip op. at 2.

"[T]he Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal." *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." *Jackson v. Shanks*, 143 F.3d 1313, 1321 (10th Cir. 1998).

As discussed above, there were no constitutional errors in petitioner's trial that prejudiced him under the *Strickland* standard, so his attorney was not ineffective in failing to raise those meritless issues on appeal. In addition, appellate counsel was not ineffective for choosing not to raise all non-frivolous issues. Therefore, the OCCA's analysis of petitioner's right of effective assistance of counsel was not contrary to or an unreasonable application of federal law, and petitioner is not entitled to habeas corpus relief.

**ACCORDINGLY**, the Magistrate Judge recommends that this action be, in all respects, dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the parties are given ten (10) days from being served with a copy of this Report and Recommendation to file with the Clerk of the Court any objections with supporting briefs. Failure to file timely written objections to the Magistrate Judge's recommendations may result in waiver of appellate review of factual and legal questions. *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996); *Moore v. United*

*States*, 950 F.2d 656, 659 (10th Cir. 1991).

**DATED** this 3rd day of June 2008.

**KIMBERLY E. WEST**
**UNITED STATES MAGISTRATE JUDGE**